IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case no. 6:21-cr-03016-BCW-1 |
| ) | |
| PATRICIA ASHTON DERGES, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT FOR PREJUDICIALLY COMPROMISING 6TH AMENDMENT RIGHTS OF DEFENDANT TO SPEEDY TRIAL**

Defendant, Patricia Ashton Derges, MD ("Defendant"), by and through her counsel, respectfully moves this Court to dismiss the Superseding Indictment For Prejudicially Compromising 6th Amendment Rights of Defendant to Speedy Trial.

*Introduction*

1. Defendant is accused of 23 counts under a Superseding Indictment, comprised of counts sounding in Wire Fraud, Distribution by Means of the Internet without a Valid Prescription, False Statements, CARES Acct Fraud, Forfeiture Allegation, and Mandatory Restitution. Investigative work relating to the charges against Defendant was conducted by Government Agents affiliated with the Federal Bureau of Investigation ("FBI") and U.S Department of Health and Human Services ("HHS") by and through its Office of Inspector General ("OIG").

2. Defendant is an MD practicing as a duly registered and licensed Assistant Physician in the State of Missouri, having commenced her medical school studies at the age of 51; received her medical doctor degree in her mid-50's; and having been unable to garner a residency, was unable to be a duly registered physician, instead qualifying to serve as an MD licensed as an Assistant

Physician.

3. Defendant is married, the mother of eight children, and grandmother of twenty-four grandchildren; the recipient of the Jacqueline Kennedy Onassis Award in Washington, DC; and the recipient of the Springfield, Missouri Humanitarian of the Year Award.

4. After becoming an Assistant Physician, Defendant thereafter opened and operated as an Assistant Physician a health care clinic, Lift Up Someone Today ("Lift Up") serving the health care needs of the poor, indigent, elderly, uninsured, unemployed, mentally vulnerable, street people and others who simply could not navigate the traditional health care system. Lift Up operated and served those in need in Springfield, Missouri and subsequently grew to include other locations in Southwest Missouri.

5. On March 28, 2020, Defendant made public and announced her candidacy as a Republican running for the Missouri State Representative for District 140, Christian County, running on a platform involving the sponsoring of a Bill which would allow assistant physicians to become full physicians after completing a period of five years serving the health care needs of poor, indigent and elderly patients in rural areas of the State of Missouri underserved by health care providers.

6. The Bill Defendant sought to sponsor was one which garnered strong opposition by powerful state medical and health care lobbyists in Jefferson City, being the capital of the State of Missouri.

7. Approximately one month following the announcement of her candidacy, on May 1, 2020 Defendant was warned that a federal investigation had been imitated by the Government which was purported to target the medical practice of the Defendant. This occurred contemporaneously with or shortly before Government, by and through its special agents employing their badges to identify themselves, employing persuasive statement procurement techniques while overtly

2

conducting interviews of patients of Defendant and subpoenaed records relating to Defendant's practice, causing concern on the part of patients who did not understand how their protected medical records got in the hands of federal agents.

8. Defendant won the primary election for her State Representative on August 4, 2020.

9. The Government continued with overt investigative undertakings being certain to share with interviewees the federal criminal investigation of Defendant.

10. The general election for the State Representative position sought by Defendant was held on November 3, 2020.

11. Defendant was named the winner of the 2020 general election for Missouri State Representative for District 140, Christian County.

12. On January 6, 2021, Defendant was sworn in and duly seated as the State Representative for Missouri's District 140.

13. Shortly after being sworn in, Defendant filed her Bills to attempt to pass legislation providing for an avenue by which assistant physicians could attain an unrestricted general practitioner license in the State of Missouri, by and through its Board of Registration for the Healing Arts..

14. On January 12, 2021, Defendant's then counsel was contacted by AUSA Randy Eggert advising the Government had decided to move forward with the indictment of the Defendant.

15. On January 16, 2021, the then 63-year-old Defendant was advised by the Government she had been charged under a sealed Indictment. When Defendant self-surrendered, despite her criminal history being comprised of two traffic tickets, was handcuffed and held during processing.

16. Less than one month after being duly sworn in, on February 1, 2021, the Indictment was unsealed and the Defendant was charged, arraigned and released per pretrial terms of release.

Virtually immediately, Defendant was stripped of her committee positions as a State Representative, asked to resign her position as State Representative by the Speaker of the House, removed from her office and relocated to a converted supply closet in the State Capital of Missouri; investigated by and through the Missouri Board of Registration for the Healing Arts; and the Government, by and through its Department of Justice, conducted an hour plus long public press conference announcing and publicly reviewing the allegations of the Indictment of the Defendant which garnered national media print, internet and national televised news coverage.

17. On March 26, 2021, a Superseding Indictment was thereafter filed which added counts sounding in CARES Act fraud, this despite the Government being in possession of the CARES Act money awarded Defendant's company.

18. At all times Defendant has maintained her innocence.

19. Defendant spurned, nay rejected, any and all of the multiple offers for plea deals proffered by the Government.

20. The Defendant did not waive any of her Speedy Trial rights under the 6th Amendment of the U.S. Constitution.

21. The present case was set for a two-week jury trial to commence on August 16 2021.

*Relevant Background*

22. Final trial preparation undertakings thereafter commenced. A July 21, 2021 pretrial conference confirmed the August 16, 2021 trial setting. The Court thereafter designated Judge Harpool to serve as the trial judge to the present case.

23. The parties collaboratively addressed pretrial exchanges and communicated in an effort to streamline the trial, identify stipulations to which the parties could agree and other similar issues.

24. On August 5, 2021 AUSA Randy Eggert called and advised counsel for Defendant that a key witness ("Subject Witness") endorsed by the Government to testify in the present case had sustained a "stroke" the prior day (being August 4, 2021). The Government further advised the Government had been in contact with the wife of the Subject Witness who confirmed that the Subject Witness had been unresponsive on August 4, 2021 but had shown "some improvement" on August 5, 2021.The Government, by and through AUSA Eggert confirmed the Subject Witness would not be available to testify at trial on August 16, 2021.

25. The Defendant's counsel immediately confirmed with the Government that the Subject Witness was vital to the defense herein and would consent to the continuance of the trial herein. The Government proceeded to suggest (erroneously) that the Government would be able to proceed with the counts reliant on the Subject Witness by getting certain written email correspondence between Defendant and the Subject Witness with a business records affidavit, some with which the Defendant's counsel did not concur. The Government suggested the Government would consent to the continuance of trial herein.

26. On August 5, 202, an informal telephone conference was conducted with the trial judge, being Judge Harpool, during which the unavailability of the Subject Witness, the reason (as provided by the Government) for the unavailability of the Subject Witness, and need for continuance of trial setting were discussed. The trial judge noted the case had not been formally assignment to him and that a Motion to Continue was required.

27. After further discussion with AUSA Eggert herein, during which the Government emphasized it preferred the request for a continuance be filed by the Defendant with the noting that the Government consented to same.

28. Given the foregoing, and based on the unequivocal affirmative representations by the

Government of the unavailability of the Subject Witness due to the Subject Witness having sustained a stroke and the fact the Subject Witness would be unavailable to testify at trial, the Defendant, by and through her counsel, filed a Motion to Continue herein.

29. The Court granted the Motion to Continue and, without consultation with counsel for Defendant, re-set the present cause for the jury trial to commence in June 2022, being almost 11 months from now.

30. But for the affirmative representations of the Government relative to the health and condition of the Subject Witness, no Motion to Continue would have been filed.

31. The Defendant herein has not waived her rights to a Speedy Trial under the Sixth Amendment of the United States Constitution.

32. On August 16, 2021, the date on which the jury trial of the present cause was originally scheduled to be conducted, Defendant's counsel issued a letter to AUSAs Kempf and Eggert expressing concern about the availability of the Subject Witness going forward; noting specifically that Defendant's counsel that he was unaware of the specific "condition" of the Subject Witness and expressing support for the proposition that the deposition of the Subject Witness should be taken to preserve the testimony of the Subject Witness. Defendant's counsel specifically requested the Government consent to the scheduling of the deposition of the Subject Witness in lieu of live testimony and suggesting dates therefore.

33. On August 20, 2021, AUSA Kempf issued a letter to Defendant's counsel confirming the title of a General Counsel associated with the employer of the Subject Witness with whom AUSA Kempf spoke noting that the General Counsel for the employer of the Subject Witness was still in the hospital, and further, advised that the Subject Witness is "expected to 'recover'"; did not know any further detailed regarding the extent of the anticipated recovery of the Subject

Witness; and that the Subject Witness was "expected to go through rehabilitation upon discharge from the hospital." AUSA Kempf confirmed the Government's desire to preserve the testimony of the Subject Witness by means of deposition.

34. On August 23, 2021, Defendant's counsel issued a letter to AUSA Kempf specifically requesting the date on which AUSA Kempf spoke with the General Counsel of the employer of the Subject Witness and the name of said General Counsel.

35. On August 23, 2021, AUSA Kempf sent an email to Defendant's counsel confirming the name of the General Counsel of the employer of the Subject Witness and specifically noted that the date on which AUSA Kempf spoke to the General Counsel of the Subject Witness was August 20, 2021.

36. Given the foregoing representations of the Government, Defendant's counsel consulted with health care professional resources regarding the likely severity of a stroke in the event an individual remained hospitalized for two weeks following the stroke.

37. Defendant's counsel procured a report from a private investigator situated in the vicinity of the Subject Witness who prepared a report suggesting that the Subject Witness was not hospitalized since at least August 7, 2021 and that the Subject Witness was, in fact, less than after AUSA Kempf reported to Defendant's counsel that the Subject Witness was still in the hospital, driving about his town, shopping at Lowes for garden supplies, performing activities associated with heavy lifting and transport and off-loading of the purchased garden supplies. A true and correct copy of the private investigator's report (replete with photographic images of the Subject Witness) prepared in this regard is attached hereto, incorporate herein by reference, filed under seal, and marked Exhibit A.

38. On August 24, 2021, Defendant's counsel wrote a letter to AUSA Kempf, a courtesy

copy of which was sent to AUSA Eggert, confirming the substance of the findings of the private investigator's findings vis-à-vis the Subject Witness; offering to provide the private investigator's report upon receipt of a written request therefore; and noting the wholesale absence of due diligence on the part of the Government relative to the affirmative representations made regarding the health and availability of the Subject Witness; and, most notably, confirming the willingness and availability of the Defendant to explain to the Government the incentive for obstruction being conducted by the Subject Witness and/or those who spoke to the Government about the condition of the Subject Witness; assistance in the Government's undertakings to assess the obstruction to justice which was a function of affirmative and material misinformation being provided to the Government by those upon whom the Government negligent relied as a basis for the Government's affirmative misrepresentations to the Court and Defendant herein.

39. A true and correct copy of the chain of email correspondence by and between Defendant's counsel and AUSA Eggert and AUSA Kempf (as referenced above) is attached hereto, incorporated herein by reference, filed under seal and marked Exhibit B.

40. On August 30, 2021, AUSA Eggert issued a letter to Defendant's counsel which confirmed procurement by the Government of a HIPAA waiver from the Subject Witness; receipt of medical records pertaining to the Subject Witness; and the review of same. The August 30, 2021 letter from AUSA Eggert set forth determinations by the Government relative to the Subject Witness following review of the records. The Government's determinations included: a) the Subject Witness did not have a stroke, but rather, a "stroke-like event"; that the Subject Witness had not been hospitalized continuously from the date of the underlying episode on August 4, 2021 until August 20, 2021 (as expressly stated by AUSA Kempf), but rather, was released from the hospital on August 6, 2021; the Subject Witness actually was working on

august 16, 2021, the date on which the trial of the present cause was to commence.

41. At all times pertinent hereto, the Government was the sole portal through which all communication regarding the availability or purported unavailability of the Subject Witness as purportedly related to the Government by the wife of the Subject Witness and the General Counsel of the employer of the Subject Witness.

42. The Defendant relied on the representations of the Government regarding the unavailability of the Subject Witness.

43. The Defendant had a right to rely on the representations of the Government regarding the unavailability of the Subject Witness and the Defendant did so believing the representations were true. The Government had a duty to ensure the accuracy of the representations made by the Government to the Defendant and the Court were accurate.

44. The standard operating procedure applicable to the Government in this regard is nothing short of the very reasonable due diligence conducted by the Government after-the-fact to ascertain the material falsities comprising the representations. But forth the failure of the Government to discharge its duty in this regard, the Defendant would never have sought to continue the present cause from its original August 16, 2021 jury trial setting.

45. The Government has failed to share the medical records upon which the Government is premising its re-characterization of the health of the Subject Witness.

46. The Government has indicated it was going to follow-up with the medical doctors purporting to have treated/are treating the Subject Witness but have not shared information arising therefrom.

*LEGAL DISCUSSION*

47. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." *Sixth Amendment, U.S. Constitution.*

48. In the present case, the Defendant has at all times been consistent in that she has never waived her right to a Speedy Trial and was ready, willing and able to proceed with the jury trial scheduled to commence August 16, 2021.

49. In <u>Baker v. Wingo,</u> 407 U.S. 514 (1972), the Supreme Court held a defendant's constitutional right to a speedy trial cannot be established by any inflexible rule, but can be determined only on an *ad hoc* balancing basis in which the conduct of the prosecution and that of the defendant are weighed. The court should assess such factors as the length of and reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. In this case, the lack of any serious prejudice to petitioner and the fact, as disclosed by the record, that he did not want a speedy trial outweigh opposing considerations, and compel the conclusion that petitioner was not deprived of his due process right to a speedy trial. Pp. 407 U. S. 519-536.

50. In affirming the lower Court's decision, the Supreme Court in <u>Baker</u>**,** adopted the rule that the lower Court adopted and used as a factor in determining whether the speedy trial right had been denied was whether or not [the Defendant] had asserted his right. However, a waiver of that right could not be presumed, except as to delay caused by Barker himself. The conduct of both the prosecution and [the Defendant] were to be balanced, taking into account Barker's assertion of the right, prejudice to Barker, the length of delay, and the reasons for the delay. Id.

51. The Supreme Court in <u>Baker</u> provided a detailed breakdown of the analysis to be conducted by the Court in Speedy Trial Issues.

52. The Supreme Court first noted that "[t]he right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused" for three reasons:

53. First, the Court noted that "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused". The Court commented on the backlog of cases, mainly in urban courts, that often enable defendants to negotiate a plea for a lesser offense. The Court also noted that persons released on bond had the opportunity to commit further crimes the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape", and that "delay between arrest and punishment may have a detrimental effect on rehabilitation." The Court also noted that if the accused cannot make bail, that too can make rehabilitation difficult, that a lengthy pre-trial detention can be costly, and that "society loses wages which might have been earned, and it must often support families of incarcerated breadwinners." Second, the Court noted that "deprivation of the right may work to the accused's advantage." As the time between arrest and trial lengthens, witnesses may become unavailable and/or their memories fade; if the witnesses were for the prosecution the case may be seriously weakened (as the prosecution has the burden to prove the defendant guilty beyond a reasonable doubt). Finally, the Court noted that the concept is more vague than with other rights, in that the Court "cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. Id.The Court then noted that there were two competing approaches as to how to handle the uncertainty regarding "how long is too long, neither of which it accepted.Id.

54. One approach (supported by the American Bar Association) was to "hold that the Constitution requires a criminal defendant to be offered a trial within a specified time period." The Court rejected this approach, stating that there was "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. Id.

55. The other approach was to "restrict consideration of the right to those cases in which the accused has demanded a speedy trial." In other words, if the defendant did not specifically demand a trial, the defendant waived his/her right to appeal the matter. The Court also rejected this approach, as it considered a speedy trial to be a fundamental right, and quoting <u>Carnley v. Cochran</u> the Court ruled that "[p]resuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver. Id.

56. As a balancing test, the Court adopted four factors to be considered in determining, on a case-by-case basis, whether a defendant has been prejudiced by the lack of a speedy trial, to wit:

    a. the length of delay,

    b. the reason for the delay,

    c. the time and manner in which the defendant has asserted his right, and

    d. the degree of prejudice to the defendant which the delay has caused.

    e. Taking these factors into consideration, though, the court agreed that the period of time between initial arrest and trial – over five years – was "extraordinary" and that only seven months of the delay was justifiable (the period of the ex-sheriff's illness).Id.

57. The Defendant is a medical doctor working as an Assistant Physician providing health

12
Case 6:21-cr-03016-BCW   Document 48   Filed 09/01/21   Page 12 of 16

care to poor, indigent, elderly, unemployed, uninsured people in Southwest Missouri, a faith based professional undertaking which has been increasingly hampered each day during which the present case pends.

58. The Defendant is a duly elected and seated Missouri State representative and, as such, is a lawmaker representing Christian County, Missouri residents. Virtually contemporaneously with the unsealing of the Indictment herein, and each day thereafter, the Defendant has been relegated to a status in the Missouri State House of Representatives, being a status akin to being deemed "untouchable."

59. Since the unsealing of the Indictment herein, the Defendant has been compelled to endure the humiliation of a cry for her resignation by the Speaker of the House of Representatives and subjected to having her office relocated from her initial assigned office to an "office" which is a converted closet.

60. The Defendant was compelled to endure a wildly public press conference conducted by the Office of the United States Attorney in Springfield, being one which demonized the Defendant and cast her in a guilty light despite no trial, much less conviction, being garnered.

61. The Defendant has been compelled to endure the intra-familial hardship associated with explaining to her 8 children and 24 grandchildren that she being federally criminally accused.

62. The Defendant has been compelled to endure expressions of disdain by patients who were concerned with how the Government got access to their HIPPA protected medical records with their consent.

63. The platform on which Defendant sought election as a State Representative involved sponsorship of a Bill design to broaden the scope of health care to Missourians, a Bill which has been ignored since the unsealing of the Indictment herein.

64. The Defendant's husband, a senior lending officer with a federal insured lending institution has been rendered perpetually tenuous since the unsealing of the Indictment herein.

65. The Defendant's reputation in the community, one which has included many local, state and national awards recognizing Defendant's giving to and caring of the public.

66. The Defendant has been compelled to address angry and threatening words and, in one case, a threatened lawsuit, from patients who, prior to interaction with federal investigative law enforcement, were grateful, effusive in their praise of Defendant for her care, were led to believe by the Government's agents that they had been wronged by Defendant, through in-person interviews, re-interviews, and calls with patients of Defendant.

67. The Defendant has been compelled to endure being subjected to gender based insensitive and inappropriate statements by an AUSA during which the subject AUSA, at the conclusion of a reverse proffer, suggested to Defendant she take a plea deal so she can "go home and be a grandmother."

68. The Defendant has been the subject of not one but two widely reported press releases issued by the Department of Justice.

69. The Defendant has been forced and compelled to navigate the concurrent State Board of Registration for the Healing Arts concurrent and collaborative regulatory undertakings designed to further pressure the Defendant into capitulation herein.

70. With each day of delay, the degree of prejudice inuring to the detriment of the Defendant as a result of the actions of the Government increases exponentially.

71. The reason for the continuance, and hence delay, of the trial herein was a direct and proximate and sole result of the Government's failure to exercise even a modicum of care with respect to conducting due diligence and drilling down on the veracity of third-parties' purported

characterization of the Subject Witness' unavailability to testify herein.

72. The Government's representations to the Court and the Defendant, both orally and in writing, were erroneous.

73. The Defendant has in no way, manner, fashion, or respect contributed to the cause for delay herein.

74. In short, the Defendant herein is significantly more adversely affected by the nearly 11-month delay in the conducting of the jury trial herein than one might ever imagine could be possible.

WHEREFORE, for the foregoing reasons, the Defendant prays this Honorable Court grant the following relief:

A. Issue an Order dismissing the present cause of action with prejudice;

B. Issue an Order granting the right of the Defendant to depose the Subject Witness to permit the Defendant to assess her rights relative to alternative prospective courses of action;

C. Issue an Order directing the Government to release the medical records received and reviewed to date relative to the health care accorded the Subject Witness for in-camera inspection and examination by the Court and the Defendant;

D. Issue an Order directing the Government to share all writings and communication of any and every nature by and between the Subject Witness, the General Counsel of the employer of the Subject Witness, the wife of the Subject Witness and the Government relative to any aspect of the availability or unavailability of the Subject Witness to testify at trial herein with the Court and Defendant; and, in the event of the non-dismissal of the present cause, the issuance of an Order mandating and directing the

re-setting of the present cause for trial on the soonest date possible with the dismissal of those counts relating to the subject matter about which the Subject Witness was contemplated by the Government to testify;

E. Issue an Order to the Government directing the Government disclosure of internal memoranda, writings, texts, and emails by and between AUSA Kempf and AUSA Eggert regarding matters relating to the availability or unavailability of the Subject Witness for trial herein;

F. Schedule a

G. Such other and further relief as the Court deems just and meet given the unique and extraordinary circumstances herein.

KODNER WATKINS

By:\_\_\_/s/ Albert S. Watkins_____
ALBERT S. WATKINS, LC MO#34553
1200 South Big Bend Boulevard
St. Louis, Missouri 63117
Phone: (314) 727-9111
Facsimile: (314) 727-9110 Facsimile
E-Mail: albertswatkins@kwklaw.net

*COUNSEL FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

Signature above is also certification that on September 1, 2021 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court utilizing the CM/ECF system which will send notification of such filing to all parties of record.