# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 21-03016-01-CR-S-BCW |
| PATRICIA ASHTON DERGES, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Dismiss Superseding Indictment or, in the Alternative, to Recuse Assistant United States Attorney (AUSA) Shannon Kempf. (Doc. 83.) Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, this action has been referred to the undersigned for the purpose of submitting a report and recommendations on all pretrial motions to dismiss the indictment. Defendant moves for a dismissal of the case or disqualification of "AUSA Kempf and any other AUSA addressing the present cause whose interaction with AUSA Kempf effectively tainted their status as a prosecutor," because Mr. Kempf is allegedly a fact witness in the case due to his former role as director of the Missouri Medicaid Fraud Control Unit (MFCU). As follows, it is **RECOMMENDED** that the Motion be **DENIED** as frivolous and unsupported by law.

   I.   **Background**

On January 20, 2021, Defendant was charged in a twenty-count indictment. (Doc. 1.) On March 26, 2021, Defendant was charged in a twenty-three-count superseding indictment, including counts related to wire fraud, distribution of controlled substances by means of the internet without a valid prescription, making false statements to federal law enforcement, as well as wire fraud

involving the CARES Act Relief Fund. (Doc. 18.) On August 30, 2021, Defendant originally filed this motion (doc. 46), but it was denied without prejudice (doc. 47) as untimely and filed without leave to do so. On September 1, 2021, Defendant requested leave (doc. 50), which was granted by the Court as unopposed on September 16, 2021 (docs. 65, 66). On September 22, 2021, Defendant refiled the Motion, and on October 6, 2021, the Government filed its Response to the Motion. (Doc. 89.) On October 18, 2021, Defendant submitted her reply brief. On November 2, 2021, the undersigned held a hearing on this and other pending motions. (Doc. 97, 98.) Relevant to the Motion at issue, at the hearing, the Court heard testimony from Teresa Dailey, a Special Agent (SA) with the United States Department of Health and Human Services (HHS), and Amanda Burrows, a former investigator at the MFCU. (Doc. 100 at 62-63, 88.)

## II. Findings of Fact

In April 2020, SA Dailey was contacted by the Federal Bureau of Investigation (FBI) regarding an investigation into Defendant. (Doc. 100 at 63-64.) Thereafter, she opened a co-investigation into Defendant's medical practice, gathering relevant facts and speaking to witnesses. Given concerns regarding Medicaid,[1] SA Dailey contacted the MFCU, and specifically, Agent Burrows, to confirm whether Defendant was enrolled in Missouri's Medicaid program, and to review any available claims information. (*Id.* at 65, 90; Ex. 4.) Agent Burrows supplied SA Dailey the Enrollment Application and Provider Agreement (the "agreement") for Ozark Valley Medical Clinic, which was signed by Defendant, indicating her intent to participate and comply with the rules of the Medicaid program. (Doc. 100 at 67-68, 88-89; Ex. 4.) Agent Burrows also reviewed the available claims data to ensure there was no violation of the agreement, and facilitated interviews for SA Dailey with state employees, including the Director of the Missouri Medical

---

[1] Defendant was an enrolled Medicaid provider and there were concerns that payments were made by patients for services covered under Medicaid, which is not allowed under the provider agreement. (Doc. 100 at 73.)

Marijuana program and the Director of the Missouri Dental Board. (Doc. 100 at 74, 90-92.)

SA Dailey testified that she only dealt with Agent Burrows during the investigation, and did not have any interaction with Mr. Kempf, who was the MFCU director at the time. *Id.* at 75-76. Similarly, Agent Burrows testified that Mr. Kempf did not participate in the investigation, although he, as the MFCU director, along with Burrow's immediate supervisor, was required to approve the opening of the MFCU case file and was periodically informed about the investigation. *Id.* at 94. Agent Burrows indicated that the approval is "sort of automated . . . [and she] kind of had blanket approval to open cases on any federal investigation that they asked assistance on." *Id.* at 101. Mr. Kempf also informed the Court that his role in the MFCU investigation of Defendant was strictly administrative as the MFCU director, and it was standard that that the MFCU would support HHS whenever assistance was requested. *Id.* at 14-15. Ultimately, the MFCU case file on Defendant was closed because there were no longer concerns of Medicaid exposure and no further assistance was requested by HHS or the FBI. *Id.* at 95. Additionally, none of the pending charges (docs. 1, 18) against Defendant involve Medicaid claims or arise from evidence gathered during the MFCU investigation. (Doc. 100 at 15.)

In July 2021, Agent Burrows was contacted by a member of Defendant's investigation team. *Id.* at 95. She declined to speak with the investigator about the MFCU investigation, and indicated that she would contact Mr. Kempf to see if she should speak with the investigator. *Id.* at 96. She later contacted Mr. Kempf as well as SA Dailey to inform them that Defendant's investigator had reached out, and Mr. Kempf and SA Dailey advised her that it was her decision whether to speak to the investigator. *Id.* at 15, 97-98.

III. Conclusions

As a principal matter, the undersigned finds Defendant's Motion to be unclear and

unsupported, given the inclusion of irrelevant facts and hyperbole, as well as the lack of clarity and sufficient legal analysis. Given the meandering factual allegations and arguments in her brief, it seems that Defendant is attempting to weave an elaborate (and largely, unsubstantiated) narrative, implying that Mr. Kempf (and relatedly, the Government) targeted Defendant for some nefarious purpose, likely politically motivated, given the timing of her candidacy announcement, swearing-in ceremony as state representative, and the filing of the charges against her. As well, she asserts without any legal support that Mr. Kempf (as an AUSA) faces an "irreconcilable conflict" because he is a "federal prosecutor who served as a supervisor of a state investigator conducting an investigation" into Defendant, although notably, none of the federal charges Defendant currently faces arise from the MFCU investigation. The illogical and frivolous nature of the facts and arguments presented are self-evident.

Reviewing the disjointed facts and conclusory arguments, the Court is left to speculate as to what warrants the severe remedy of dismissal or recusal requested. Because proper legal analysis and organization were sorely lacking, the Government was forced to respond to these allegations, as best as it could understand them, as a claim of prosecutorial misconduct requiring dismissal, and in the alternative, a motion for recusal because Mr. Kempf is a potential fact witness. (Doc. 89 at 11.) The Court will address the Motion, construing Defendant's arguments similarly: Mr. Kempf has conflicting loyalties, or an appearance of impropriety, stemming from his former role as the MFCU director and his supervision of Agent Burrows who investigated Defendant, which was not disclosed, justifying dismissal of the case; and, if dismissal is not granted, Mr. Kempf as well as other AUSAs "tainted" by their interaction with Mr. Kempf should be recused "by virtue of his status" as a fact witness. (Docs. 83 at 1, 29-30; 94 at 4, 7-8.)

Based on a thorough review of the record, the undersigned concludes that Mr. Kempf does

not have any conflicting loyalties nor is there any appearance of impropriety to warrant dismissal of the case and further, Mr. Kempf's recusal is also not supported because he is not a fact witness in the case. Here, while Mr. Kempf formerly served as the MFCU director, overseeing the investigation of MFCU agents, including Agent Burrow's investigation of Defendant in support of a federal investigation, the undersigned finds his former role was only ministerial and administrative in function. Moreover, none of charges for which Defendant is indicted arise from the MFCU's investigation, lending further support to the conclusion that there is no conflicting loyalties or appearance of impropriety in Mr. Kempf's current role as an AUSA, requiring dismissal of the case. Relatedly, the undersigned finds no prosecutorial misconduct or prejudice because Mr. Kempf did not disclose to the grand jury his former position as the MFCU director.

In support of his arguments, Defendant heavily cites *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 791 (1987), wherein the United States Supreme Court found improper the appointment of attorneys to prosecute a criminal contempt for violations of an injunction against trademark infringement because the same attorneys simultaneously represented the trademark holder. (Doc. 83 at 27-28.) The case is inapposite to the case at bar. Unlike *Young*, here, Mr. Kempf does not simultaneously represent any interested private party in a related matter. Moreover, Defendant's reliance on *Young* for the proposition that participation of an interested prosecutor universally or generally infringes due process is misplaced, considering *Young* was decided under the Supreme Court's supervisory powers over the lower federal courts, not on constitutional grounds.

To the extent Defendant implies that the MFCU investigation was improper because Defendant did not receive any Medicaid reimbursements to justify an investigation, the undersigned disagrees. The record establishes that Defendant enrolled in the Medicaid program

per a signed agreement, and thus, the MFCU's review, on SA Dailey's request, as to whether Defendant's participation complied with the rules of the Medicaid program, was appropriate. Defendant also raises concern that Agent Burrows declined to speak to her investigator because she wanted to speak to her "former boss" (Mr. Kempf) first. The record clearly demonstrates that Mr. Kempf properly advised Agent Burrow that she may speak to the investigator if she chooses. The fact that she ultimately chose to not speak to the investigator, does not present conflicting loyalties, an appearance of impropriety, nor prosecutorial misconduct on the part of Mr. Kempf. *United States v. Bittner*, 728 F.2d 1038, 1041 (8th Cir. 1984) ("Although the prosecution and the defense have an equal right to interview witnesses in a criminal proceeding [and the prosecution may not without justification interfere with that right], the defendant's right of access is not violated when a witness chooses of her own volition not to be interviewed.").

Finally, the undersigned notes that Defendant fails to identify to what precisely Mr. Kempf is a fact witness. Regardless, given Mr. Kempf's limited participation in the MFCU investigation of Defendant while he was director, and again, that none of the charges arise from that investigation, the undersigned concludes that Mr. Kempf is not a fact witness in the case. Therefore, his recusal is unnecessary.

## IV. Recommendation

Based on the foregoing, it is **RECOMMENDED** that the Motion (doc. 83) be **DENIED**.

/s/ David P. Rush<br>
DAVID P. RUSH<br>
UNITED STATES MAGISTRATE JUDGE

DATE: December 13, 2021